**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSSETS**
-------------------------------------------------------------x
BETH CONNELLY,

    **Plaintiff,**

 **v.**

**AMAZON.COM, INC. and TENMARKS**
**EDUCATION LLC,**

    **Defendants.**
-------------------------------------------------------------x

**Docket No.:**


<u>**COMPLAINT**</u>

**DEMAND FOR JURY TRIAL**


Plaintiff Beth Connelly, by and through her attorneys, as against Amazon.com, Inc. and TenMarks Education LLC (collectively "Defendants") alleges as follows:

<u>**JURISDICTION AND VENUE**</u>

1. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA").  This Court has supplemental jurisdiction over the State law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution

2. Venue is proper in this District because Defendants conduct business in this District, and some of the acts and/or omissions giving rise to the claims herein alleged took place in this District.

<u>**PARTIES**</u>

3. Defendant Amazon.com, Inc. ("Amazon") is a corporation headquartered in Seattle, Washington

4. Defendant TenMarks Education LLC ("TenMarks") is a wholly-owned subsidiary of Defendant Amazon. ("Amazon").

5. Defendant TenMarks develops and markets curriculum resource products and instructional programs to school districts, individual schools, and teachers across the country.

6. Plaintiff Beth Connelly was employed by Defendants from approximately May 2015 until her termination on July 2, 2018, when she was 65 years' old.

7. Since March 2017, Plaintiff worked for Defendants remotely from her home in Exeter, New Hampshire, occasionally travelling to TenMarks' headquarters in Boston, Massachusetts and its offices in Burlingame and Foster City, California.

## FACTS

8. Plaintiff was first hired by Defendants in approximately May 2015 as an Account Manager in TenMarks's Customer Success team.

9. In that role, Plaintiff was assigned accounts of "Enterprise Customers," which had purchased over $50,000 worth of TenMarks' products. These Enterprise Customers consisted mainly of various school districts. Plaintiff was responsible for establishing and maintaining a relationship between TenMarks and these customers.

10. As an Account Manager, Plaintiff's responsibilities included meeting with school administrators, teachers, and content area specialists. These meetings were focused on setting goals for implementation of TenMarks' programs and products, training the customers' teachers on TenMarks' programs, reviewing data to gauge student progress under the programs, and identifying experts within the districts who could assist with the implementation of the programs.

11.     The ultimate goal of Account Managers like Plaintiff was to ensure that the customers remained satisfied so that they would continue to renew their TenMarks purchases and by new TenMarks products.

12.     At the time Plaintiff was hired in May 2015, the Customer Success team consisted of Plaintiff and three other Account Managers who had been hired before her.

13.     One of these other Account Managers was Jill Florant, who was in her 50s.

14.     All Account Managers in the Customer Success team reported to the same supervisor.

15.     Over the course of 2015, the number of employees in the Customer Success team gradually increased.  By roughly January 2016, the team consisted of approximately 12 Account Managers, all of whom reported to the same two supervisors.

16.     In late 2016, TenMarks began experiencing some difficulties and began to lay off employees.  In the Spring of 2017, the Company laid of several Account Managers in the Customer Success team.

17.     The Account Managers who were laid off at this time were selected via a "last in, first out" process under which the most recently hired members of the team were the first to be laid off.

18.     As Plaintiff was one of the longest-serving members of the team, she was not affected by these layoffs.

19.     Aside from the employees laid off in this process, a number of other team members voluntarily resigned during this period.

20.     In April 2017, Plaintiff's title was changed from Account Manager to "Account Specialist."

21.     Her duties remained roughly the same after this change, except that rather than being assigned to Enterprise Customers she was given the responsibility for managing numerous accounts of small or mid-sized customers.

22.     The reason for this April 2017 change was the Company's determination that these smaller customers needed more support to encourage renewals and expanded sales.

23.     This April 2017 change had no effect on Plaintiff's salary.

24.     Plaintiff continued to be a member of the Customer Success team after this change in April 2017.

25.     Plaintiff continued to report to the same supervisor following this change in April 2017.

26.     Throughout the remainder of 2017, the membership of the Customer Success team continued to decline.

27.     By the Spring of 2018, the Customer Success team had been reduced to just five employees—Jill Florant (Account Manager, longest-serving member of the team, in her 50s); Plaintiff (Account Specialist, second-longest serving member of the team, age 65); Nicki Radachonski (Account Manager, third-longest serving member of the team, in her 30s); Kim Klein (Account Manager, fourth-longest serving member of the team, in her 30s); and Peter Guse (Account Manager, fifth-longest serving member of the team, in his 30s).

28.     By that time, the Customer Success team no longer had an assigned supervisor and all members on the team reported directly to TenMarks' co-founder, Meera Vaidyanthan.

29.     During this time, all five members of the Customer Success team divided amongst themselves all tasks for which the team was responsible.

30.     In March of 2018, Plaintiff was informed by Meera Vaidyanathan that TenMarks was being phased out and would cease operations in June 2019.

31.     The phase out resulted in further layoffs of members of the Customer Success team.

32.     These layoffs, however, did not proceed consistently via the "last in, first out" process that previously had been used.

33.     Instead, the Company terminated: (1) Plaintiff and Jill Florant, the two oldest and longest-serving members of the team; and (2) Peter Guse, the team member with the shortest tenure.

34.     At the time of these 2018 layoffs, there were five employees in the Customer Success team who divided up all tasks assigned to the team.

35.     At the end of the layoffs, the two remaining positions were held by Nicki Radachonski and Kim Klein, the third and fourth longest-serving team members who were both in their 30s.

36.     These two positions were to continue until TenMarks' operations ceased in June 2019.

37.     Had Defendants adhered to their "last in, first out" layoff practice, Plaintiff would have held one of those positions as the second longest-serving member of the team.

38.     Instead, Defendants deviated from their standard practice to target Plaintiff and Jill Florant – the two oldest team members – notwithstanding that they had the longest tenures in the team.

39.     As a result of Defendants' discriminatory deviation from their layoff policy, Plaintiff lost approximately one year of income and substantial Amazon stock options that would have vested over the course of 2018 and 2019.

40.     On or about October 5, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the New Hampshire Commission for Human Rights.  Plaintiff's Charge of Discrimination is attached hereto as Exhibit A.

41.     On February 20, 2019, the EEOC closed its investigation and issued a Notice of Right to Sue ("NRTS") at Plaintiff's request.

42.     Plaintiffs NRTS is attached hereto as Exhibit B.

### FIRST CLAIM FOR RELIEF
### (Age Discrimination in Employment Act ("ADEA")
### 29 U.S.C. § 631, *et seq.* – Age Discrimination)

43.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

44.     In violation of the ADEA, Defendants discriminated against Plaintiff on the basis of her age by terminating her employment.

45.     As a direct and proximate consequence of Defendants' discrimination against Plaintiff, Plaintiff suffered, and continues to suffer, substantial monetary damages, including, but not limited to, a loss of income and employment benefits, including lost stock options.

46.     As a direct and proximate consequence of Defendants' discrimination against Plaintiff, Plaintiff suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation and anguish.

47.     As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to back pay, lost employment benefits, and damages for emotional distress, as well as front pay, liquidated damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### SECOND CLAIM FOR RELIEF
**New Hampshire Law Against Discrimination ("NH LAD")**
**N.H. Rev. Stat. § 354-A:7 – Age Discrimination)**

48.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

49.     In violation of the NH LAD, Defendants discriminated against Plaintiff on the basis of her age by terminating her employment.

50.     As a direct and proximate consequence of Defendants' discrimination against Plaintiff, Plaintiff suffered, and continues to suffer, substantial monetary damages, including, but not limited to, a loss of income and employment benefits, including lost stock options.

51.     As a direct and proximate consequence of Defendants' discrimination against Plaintiff, Plaintiff suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputations, lasting embarrassment, humiliation and anguish.

52.     As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to backpay, lost employment benefits, and damages for emotional distress, as well as front pay, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(A)    For compensatory and punitive damages in an amount to be determined by the trier of fact;

(B)    For an award of front pay in an amount to be determined by the trier of fact;

(C)    For reasonable attorneys' fees, interest, and costs of suit;

(D)    For such other and further relief as the Court may deem just and equitable.


Dated: New York, New York          Respectfully submitted,
      April 12, 2019                        JOSEPH & KIRSCHENBAUM LLP

                                     By:  /s/Blake Mensing_____
                                          Blake Mensing, Esq.
                                          100 State Street
                                          9th Floor
                                          Boston, MA 02109
                                        (617) 333-8725
                                          blake@mensinggroup.com

                                          Lucas C. Buzzard (pending *pro hac vice* admission)
                                          JOSEPH & KIRSCHENBAUM LLP
                                          32 Broadway, Suite 601
                                          New York, New York 10004
                                          Tel: (212) 688-5640
                                          Fax: (212) 688-2548

                                          *Attorneys for Plaintiff*

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.

# EXHIBIT A

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | |

**New Hampshire Commission for Human Rights** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Beth Connelly | (716) 903-0921 | 10/09/1953 |

| Street Address | City, State and ZIP Code |
|---|---|
| 5 Sterling Hill Lane, Unit 538, Exeter, NH 03833 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| TenMarks Education LLC | **15+** | (415) 868-4450 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1633 Bayshore Highway, Suite 234, Burlingame, CA 94010 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Amazon.com, Inc. | **15+** | (206) 266-1000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 410 Terry Ave., North, Seattle, WA 98109-5210 | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☐ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE

Earliest                 Latest

July 2, 2018

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*
\

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
NEW YORK DISTRICT OFFICE

OCT. 0 5 2018

DATE RECEIVED

Please see attached extra sheet.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | *Mary Elizabeth (Beth) Connelly* |
| | SIGNATURE OF COMPLAINANT |
| | OCTOBER 4th 2018 |
| 10/04/2018     *Mary Elizabeth (Beth) Connelly* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE |
| Date               Charging Party Signature | (month, day, year) |

Jason S Kaufman
Notary Public, State of New Hampshire
My Commission Expires Oct. 21, 2020

**Beth Connelly v. Amazon.com, Inc. & TenMarks Education LLC**

**EEOC Charge – Extra Sheet**

I was employed by TenMarks Education LLC, a subsidiary of Amazon.com, Inc., from May 2015 until July 2, 2018. TenMarks develops and markets curriculum resource products and instructional programs to school districts, individual schools, and teachers. I was initially hired as an Account Manager in the company's Customer Success team. In that role, I was assigned accounts of larger Enterprise customers in school districts and was responsible for establishing and maintaining a relationship between TenMarks and these customers. This included meeting with school administrators, teachers and content area specialists. These meetings were focused setting goals for implementation of the TenMarks programs and products, training customers' teachers on TenMarks' programs, reviewing data to gauge student progress under the programs, and identifying experts within the districts who could assist with the implementation of the programs. The ultimate goal for Account Managers was to make sure that the customers remained satisfied so that they would continue to renew their TenMarks purchases and buy new TenMarks products. Since March 2017, I have worked remotely from my home in Exeter, New Hampshire, traveling occasionally to TenMarks' headquarters in Boston, Massachusetts and to TenMarks' offices in Burlingame and Foster City, California. Throughout my employment at TenMarks, I consistently received positive performance reviews and never had any disciplinary issues.

At the time I was hired, my team consisted of myself and three other Account Managers who had been hired before me. One of the other Account Managers who was hired before me was Jill Florant, who was in her 50s. All Account Managers reported to the same supervisor. Over the course of 2015, the number of employees in the Customer Success team gradually increased. By roughly January 2016, the Customer Success team consisted of approximately 12 Account

1

Managers, all of whom reported to the same two supervisors.

In late 2016, however, TenMarks began experiencing some difficulties and began to lay off employees. In the Spring of 2017, the company laid off several members of the Customer Success team. The Account Managers who were laid off at this time were selected via a "last in, first out" process under which the most recently hired members of the team were the first to be laid off. As I was one of the longest-serving members of the team, I was not affected by these layoffs. Aside from the employees laid off, a number of other members of my team voluntarily resigned during this period.

In April 2017, my title was changed from Account Manager to Account Specialist. My duties remained roughly the same except that rather than being assigned to Enterprise Customers (over $50,000 investment) I was given numerous accounts of small or mid-sized customers (non-Enterprise). It was determined that these customers needed more support to encourage renewal and expansion. This change had no effect on my salary, I continued to be a member of the Customer Success team, and I continued to report to the same supervisor.

Throughout the remainder of 2017, the membership of the Customer Success team continued to decline. By the spring of 2018, the team had been reduced to just five employees—Jill Florant Jill Florant (Account Manager, longest-serving member of team, in 50s); myself (Account Specialist, second longest-serving member of team, age 65); Nicki Radachonski (Account Manager, third longest-serving member of team, in 30s); Kim Klein (Account Manager, fourth longest-serving member of team, in 40s); and Peter Guse (Account Manager, fifth longest-serving of team, in 30s). At that point, the Customer Success team no longer had an assigned supervisor and we all reported directly to TenMarks' co-founder, Meera Vaidyanathan. During this period, the five of us divided up all tasks in the Customer Success team amongst ourselves.

In March of 2018, we were informed by Meera Vaidyanathan that TenMarks was being phased out and would cease operations in June 2019. The phase out resulted in further layoffs of members of the Customer Success team. These layoffs, however, did not proceed consistently via the last in, first out process that had previously been used. While Peter, the team member with the shortest tenure, was selected for termination, the company then skipped over the two other team members (Nicki Radachonski and Kim Klen) to terminate the two oldest and longest serving members of the team, myself and Jill. My termination became effective July 2, 2018. To be sure—at the time of the 2018 layoffs, there were five members of the Customer Success team who divided up all tasks assigned to that team. At the end of the layoffs, there were two remaining positions that were to continue until operations ceased in June 2019. Had TenMarks adhered to its established "last in, first out" layoff practice, I would have filled one of those positions as the second longest-serving member of the team. Instead, TenMarks departed from its practice to target me and Jill – the two oldest team members – for termination notwithstanding that we had the longest tenures at the company. As a result, not only did I lose approximately one year of income, but also substantial Amazon stock options that would have vested over the course of 2018 and 2019.

TenMarks' and Amazon's departure from their established layoff practice to target the two oldest team members with the longest tenure for termination demonstrates that they discriminated against me because of my age. I bring my age-based discrimination claims pursuant to the federal Age Discrimination in Employment Act ("ADEA") and the New Hampshire Law Against Discrimination ("NH LAD"). This charge and narrative serves as formal notification to the EEOC that I intend to pursue my ADEA claim in court by filing a summons and complaint in United States District Court 60 days from the date this charge is filed, as permitted in 26 U.S.C.

3

§ 626(d)(1).

I am represented in this matter by D. Maimon Kirschenbaum and Lucas C. Buzzard of Joseph & Kirschenbaum LLP, 32 Broadway, Suite 601, New York, NY 10004, (212) 688-5640, maimon@jk-llp.com, lucas@jk-llp.com.

# EXHIBIT B

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:   Beth Connelly
      5 Sterling Hill Lane
      Unit 538
      Exeter, NH 03833

From:   San Francisco District Office
        450 Golden Gate Avenue
        5 West, P.O. Box 36025
        San Francisco, CA 94102

[ ] *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2019-00084 | Malihe S. Kigasari,<br>Investigator | (415) 522-3078 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

[ ]   More than 180 days have passed since the filing of this charge.

[ ]   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[ ]   The EEOC is terminating its processing of this charge.

[ ]   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

[X]   The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice.  Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]   The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____          02/20/2019
          William R. Tamayo,                    *(Date Mailed)*
          District Director

Enclosures(s)

cc:   Neil M. Alexander
      Shareholder
      AMAZON.COM, INC. C/O LITTLER MENDELSON, P.C.
      2301 McGee Street, Ste. 800
      Kansas City, MO 64108

      D. Maimon Kirschenbaum
      JOSEPH & KIRSCHENBAUM, LLP
      32 Broadway, Suite 601
      New York, NY 10004

Enclosure with EEOC
Form 161-B (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of
your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the
charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include
any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters
alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in
some cases can be brought where relevant employment records are kept, where the employment would have
been, or where the respondent has its main office. If you have simple questions, you usually can get answers from
the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint
or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS   --   **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before 7/1/10 – *not* 12/1/10 – in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION   --   **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*